UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 02-13(2)(JMR)
Civil No. 05-1406(JMR)

| | | |
|---|---|---|
| TIMOTHY K. MCGRUDER, Petitioner, | ) | MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO MCGRUDER'S PETITION UNDER 28 U.S.C. § 2255 |
| v. | ) | |
| UNITED STATES OF AMERICA, Respondent. | ) | |

Petitioner Timothy McGruder was convicted after a jury trial in 2002 of murder in aid of racketeering activity based on his participation in the ambush of rival gang members that resulted in the death of four-year-old Davisha Gillum. McGruder's conviction and sentence were affirmed on direct appeal. United States v. Crenshaw et al., 359 F.3d 977 (8th Cir. 2004).

McGruder has now filed a petition under 28 U.S.C. § 2255 in which he alleges that his trial counsel, Keith Ellison, was ineffective in (1) failing to contest federal jurisdiction; (2) failing to interview witnesses and advising McGruder not to testify; (3) failing to contest the Court's "enterprise" jury instruction under 18 U.S.C. § 1959; and (4) failing to challenge the indictment on the ground that another person should also have been charged.

Because all of McGruder's claims either were decided against him on direct appeal or are otherwise without merit on their face, this petition should be summarily denied. No evidentiary hearing is warranted.

STATEMENT OF FACTS

On July 20, 1996, defendants Keith Bernard Crenshaw, Timothy Kevin McGruder, and Kamil Hakeem Johnson, all of whom were members or associates of the Rolling 60's Crips street gang, were on a mission to kill members of a rival gang known as the Bogus Boys. T. 344-47, 494. At approximately 10:45 p.m., they spotted some Bogus Boys at an Amoco gas station in St. Paul, Minnesota. They had their getaway driver, Maalik Harut, drop them off a block away. T. 347-48.

Crenshaw, McGruder, and Johnson then proceeded on foot to an alley that was separated from the Amoco station by a six-foot wooden fence. Each of the three defendants had a gun. T. 94, 345. The three of them got up on a guard rail and began shooting over the fence into the gas station parking area where at least 7 Bogus Boys were congregated. E.g., T. 149, 251, 834.

The defendants concentrated their fire on a particular blue Cadillac that was parked at the air hose about 30 feet in front of them. T. 279-80, 834. This car belonged to the girlfriend of one of the Bogus Boys. T. 164, 244-45. That night, the car contained only women and children, including four-year-old Davisha Gillum and her mother, who were getting a ride home after attending the Rondo Days neighborhood celebration in St. Paul. T. 166-71. At least 20 shots rang out. T. 282-83. When the shooting stopped, Davisha's mother and two other adult women from the blue Cadillac lay wounded. T. 252-53. Four-year-old Davisha lay dying in her mother's arms with a bullet hole through her forehead. T. 175, 934. None of the Bogus Boys had been hit.

Crenshaw, McGruder, and Johnson ran back to the waiting getaway car driven by Maalik Harut. T. 348-49. They then sought out the leaders of the Rolling 60's Crips gang in order to inform them that they had just shot at the Bogus Boys. E.g., T. 350-51, 607-09. This was an important part of their mission because the shooting was a gang-ordered hit. T. 587, 680-81. The Rolling 60's Crips and the Bogus Boys had been in

a gang war for at least the previous year. T. 595-600. It had escalated months earlier when the Bogus Boys shot and wounded a Rolling 60's member named Richard Smaller. T. 598-99, 769-70. As a result of the ongoing gang warfare, the head of the Rolling 60's Crips, Terron "Rico" Williams, repeatedly had ordered all his gang members to shoot any Bogus Boys on sight. T. 587, 681, 340. Crenshaw, McGruder, and Johnson were carrying out his orders when they shot at the Bogus Boys, missed, and killed Davisha Gillum. T. 681.

Within minutes after the murder, Crenshaw, McGruder, and Johnson found "Rico" Williams and bragged to him about having just shot at the Bogus Boys at the Amoco station. T. 607-09. After bragging to "Rico" Williams, the three defendants continued to brag to other members and associates of the Rolling 60's gang. T. 832-34, 952-59, 1064. McGruder, whose street name is "Handyman," was disappointed because his gun jammed during the shooting, T. 834, 953, 1064, a fact later borne out by ballistics evidence. T. 299-301. When the three defendants found out the next day from news reports that they

had killed an innocent four-year-old girl, they stopped bragging. T. 610-12; see also T. 836.

Eyewitnesses at and near the Amoco station described the shooters as three young black males, one of whom was very light-skinned. T. 94, 149. McGruder and Johnson are black males. Crenshaw, whose street name is "Chumley," is a very light-skinned black male. See T. VII at 37. Photospreads of potential suspects were shown to eyewitnesses. The defendants' pictures were not in the initial photospreads because they had not yet been identified as suspects. T. 189, 201-02. Two witnesses picked out photos of people they thought most closely resembled one of the shooters. Those photographs are of people who closely resemble defendant McGruder. See T. 125-30.

From bullet casings and bullet fragments found at the Amoco station, investigators were able to determine that at least 20 shots were fired from behind the fence. T. 282-83. There was no evidence of any return fire. T. 285. Casings from two different guns were found at the scene. T. 299-301. A ballistics expert testified that one set of casings was

fired from a particular type of 9 millimeter pistol manufactured by Heckler & Koch, which is a very rare gun. T. 306-10, 316. The Heckler & Koch pistol had fired Black Talon bullets, a type of ammunition that was banned in 1993 and would have been rather scarce by July 1996. T. 318-19, 512. The bullet that killed Davisha Gillum was, in all probability, a Black Talon bullet. T. 275, 307, 325-26. Defendant Kamil Johnson's girlfriend in 1996 owned a Heckler & Koch 9 millimeter pistol and Kamil Johnson had access to it. T. 523-25. The girlfriend testified that she noticed the gun was missing in late 1996, T. 525-26, which was not long after Davisha Gillum's murder. She never saw it again. See T. 526. Although the gun itself was never found, when investigators searched the girlfriend's apartment in 2002, they found boxes of Black Talon ammunition identical to the expended bullets found at the murder scene. T. 1193-94.

Despite early leads pointing to the Rolling 60's gang as the perpetrators of the crime, T. 203-04, 238, local homicide investigators were not able to develop a provable case. Although the shooters had bragged about the crime to several

fellow gang members and associates, the gang had a rigidly enforced code of silence. T. 587-88, 819, 916-17. Anyone who cooperated with the police would be severely punished or even killed. T. 588. No one involved with the gang came forward.

Eventually the investigation was taken over by the FBI Drug Task Force. T. 1179-80. Over the next several years, investigators focused their energies on developing a drug case against the leadership of the Rolling 60's Crips gang, including Terron "Rico" Williams and his younger brother Greg Hymes. In late 2001, a federal indictment was returned charging "Rico" Williams, Greg Hymes, and another high-ranking member of the Rolling 60's Crips with federal drug trafficking offenses, including an interstate cocaine trafficking conspiracy spanning 10 years. T. 533-34, 809.

On the very day "Rico" Williams was arrested on the federal drug indictment, he agreed to cooperate with law enforcement in solving the Davisha Gillum murder. T. 614-15. On the day of his arrest, he named the three shooters -- defendants Keith Crenshaw ("Chumley"), Timothy McGruder

("Handyman"), and Kamil Johnson ("Little T-Bone") -- as well as the getaway driver, Maalik Harut. Id.

Investigators then approached Harut. When confronted, Harut immediately confessed that he had been the getaway driver on the night in question. T. 353-54, 1184. He also named Crenshaw, McGruder, and Johnson as the three shooters. Id.

Both "Rico" Williams and Maalik Harut testified against Crenshaw, McGruder, and Johnson at trial pursuant to cooperation plea agreements. Greg Hymes also pleaded guilty and testified against them pursuant to a cooperation plea agreement.[1] The testimony of these three witnesses was corroborated by two other non-defendant witnesses who overheard Crenshaw, McGruder, and Johnson bragging about the shooting immediately after it occurred. T. 952-56, 1064. The government also presented essentially unchallenged evidence that the Rolling 60's Crips gang constitutes a racketeering enterprise affecting interstate commerce as defined under the

[1]Williams and Hymes pleaded guilty to federal drug trafficking charges. T. 533, 809. Harut pleaded guilty to conspiracy to commit murder in aid of racketeering activity for his role as the getaway driver. T. 328.

relevant statute, and that the perpetrators acted with the requisite motive of gaining entrance to or maintaining or increasing their position in the gang.

After a two-week trial, the jury found all three defendants guilty of the single count of murder in aid of racketeering activity. This Court sentenced each of them to the statutorily prescribed penalty of life imprisonment. The convictions and sentences were affirmed on direct appeal. United States v. Crenshaw, 359 F.3d 977 (8th Cir. 2004).

## ARGUMENT

### I. MCGRUDER'S COUNSEL WAS NOT INEFFECTIVE IN THE MANNER IN WHICH HE CHALLENGED THE EXISTENCE OF FEDERAL JURISDICTION

McGruder first claims his counsel was ineffective in the manner in which he challenged federal jurisdiction under 18 U.S.C. § 1959.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984); Garrett v. United States, 78 F.3d 1296, 1301 (8th Cir. 1996). Strickland requires a deferential review of counsel's performance. There is a presumption that representation was competent and that the challenged decisions constituted the permissible strategic and tactical choices of counsel. Strickland, 466 U.S. at 689. "[R]easonable trial strategy cannot rise to the level of ineffective assistance of counsel." English v. United States, 998 F.2d 609, 613 (8th Cir. 1993).

McGruder claims that his trial counsel failed to challenge federal jurisdiction over this matter at every stage of the proceedings. It is true that McGruder's counsel did not file a motion to dismiss the indictment in the district court based on this ground. However, one of his co-defendants did so. Docket No. 58, 82. Magistrate Judge Swearingen recommended that the motion be denied, Docket No. 92, and this court adopted the report and recommendation. Docket No. 114. Thus, McGruder was not prejudiced by his counsel's failure to file a similar motion. Had the motion been successful, it

presumably would have applied to all three defendants. Furthermore, McGruder's counsel did raise the jurisdictional issue on direct appeal. His failure to raise the issue below did not prejudice McGruder because the Eighth Circuit conducted a de novo review of the claim, rather than limiting its review to the "plain error" standard. Crenshaw, 359 F.3d at 984.

As for the merits of McGruder's jurisdictional claim, he has already lost that issue on direct appeal. Crenshaw, 359 F.3d at 984-987. Consequently, he may not relitigate that issue in the context of a § 2255 petition. E.g., English v. United States, 998 F.2d 609, 612-23 (8th Cir. 1993); see also Thompson v. United States, 7 F.3d 1377, 1379 (8th Cir. 1993).

McGruder also argues that his counsel was ineffective during trial by not eliciting facts that allegedly would have helped the jurisdictional argument, such as the claim that Terron "Rico" Williams was not really the leader of the Rolling 60's Crips gang in Minnesota. Petition at 4. But McGruder's defense at trial was alibi. He contended he was passed out in the basement of a friend's residence at the time

of the murder. T. 1304. Given the nature of his defense, he can establish no prejudice from his counsel's alleged failure to pursue an entirely different line of defense. The Eighth Circuit repeatedly has found no ineffective assistance of counsel in similar cases where trial counsel pursued one reasonable trial strategy to the exclusion of another. United States v. Acty, 77 F.3d 1054, 1059 (8th Cir. 1996); Payne v. United States, 78 F.3d 343, 347 (8th Cir. 1996).

Moreover, it was in McGruder's interest for his counsel to accept and exploit the government's evidence that Terron Williams was the head of the Rolling 60's Crips. Defense counsel used that fact to argue that (1) Williams's testimony against McGruder should not be believed; and (2) Williams was the true murderer because, as leader of the gang, he would be the logical person to carry out any gang retaliation. T. 64-67, 70. Thus, counsel's strategic decision to accept rather than challenge Williams's leadership role in the gang was a reasonable one that did not constitute ineffective assistance. English, 998 F.2d at 613.

## II. MCGRUDER HAS FAILED TO SHOW THAT HIS COUNSEL WAS INEFFECTIVE WITH RESPECT TO INVESTIGATING THE CASE OR ADVISING MCGRUDER NOT TO TESTIFY

McGruder next claims his counsel should have called a number of witnesses at trial who allegedly would have testified that Terron Williams was not the leader of the Rolling 60's and that the gang was not as structured as the government contended. Much of the analysis set forth in the preceding section is equally applicable here. McGruder and his counsel made a strategic decision to defend the case on the basis of alibi. Quibbling about leadership and the structure of the gang would only have detracted from that defense. The jurors might well have thought, if McGruder is claiming he was not at the scene of the crime, why do he and his lawyer care whether Williams ran the gang or whether the gang meetings were useful?

In addition, although McGruder names a number of people he claims his counsel never interviewed, he has failed to provide affidavits or any other evidence in support of his claim that they would have testified in the manner he describes. This is fatal to his claim. Bald assertions that

a witness would have exculpated the defendant are insufficient to warrant relief. United States v. Delgado, 162 F.3d 981, 983 (8th Cir. 1998). Such claims do not even trigger the need for an evidentiary hearing. Id.; see also Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).[2]

McGruder next claims his counsel persuaded McGruder not to testify, allegedly against McGruder's better judgment. McGruder offers no evidence in support of this claim. As he acknowledges, he discussed with his lawyer whether to testify just before his lawyer rested their case. T. 1315. When his lawyer told the court that McGruder would not be testifying, McGruder expressed no opposition. Id. McGruder was well aware that the decision was his, and his alone. At the start of the trial, the Court took pains to advise each of the defendant of that fact. T. Voir Dire at 4.

[2]Most of the witnesses McGruder lists in his petition appear to be other gang members who most likely would have asserted their privilege against self-incrimination if called as witnesses. See Foster v. Delo, 39 F.3d 873, 879 (8th Cir. 1994) (no ineffective assistance of counsel in failing to call witness who might have asserted privilege against self-incrimination). It is quite unlikely they would have been willing to talk about the nature of the gang's activities as such testimony likely would have exposed them to criminal liability.

In addition, McGruder has not shown that his proposed testimony would have had any effect on the outcome. He does not really say what he would have testified to except the vague assertion that "there were certain issues only he and other members from the gang could have clarified for the jury." Petition at 9. Once again, such vague claims are insufficient. Delgado, 162 F.3d at 983; Sumlin, 46 F.3d at 49.

III. TRIAL COUNSEL WAS NOT INEFFECTIVE WITH RESPECT TO CHALLENGING THE COURT'S JURY INSTRUCTIONS

McGruder next contends his counsel was ineffective in not challenging the court's jury instructions regarding 18 U.S.C. § 1959. His exact claim is difficult to discern. He first seems to argue that the instruction did not tell the jury that it needed to find that the Rolling 60's Crips gang engaged in drug trafficking or other racketeering activities in order to satisfy the "enterprise" element of the statute. If that is, in fact, his claim, it should be rejected. The instruction as given did include such language. T. Instructions at 18-19.

He also seems to argue that the instruction was defective because it stated that the enterprise's effect on interstate commerce need only be minimal. If that is his claim, it should be rejected because the Eighth Circuit already decided the same issue against McGruder on direct appeal. Crenshaw, 359 F.3d at 985 n.3.

Because the court's jury instructions were correct as given, counsel was not ineffective for failing to challenge them. E.g., Allen v. Nix, 55 F.3d 414, 417 (8th Cir. 1995)(no ineffective assistance in counsel's failure to file motion that was unlikely to succeed).

## IV. COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO CHALLENGE THE INDICTMENT ON THE GROUND THAT TERRON WILLIAMS WAS NOT CHARGED THEREIN

McGruder's final claim appears to be that his counsel should have challenged the indictment on the ground that Terron Williams, the leader of the gang, was not charged in the indictment along with the other three defendants. If that is, in fact, his claim, it should be rejected as a misstatement of the law.

Williams was not charged in the murder indictment because he pleaded guilty to drug trafficking charges and cooperated in the murder investigation. While Williams could have been charged with the murder on the theory he ordered his underlings to attack the Bogus Boys if the government had had enough independent evidence, there was no requirement that he be charged in order to make the indictment stand against the other three defendants. The law is clear that not every defendant who is culpable in a crime must be charged. E.g., Eighth Circuit Manual of Model Jury Instructions § 5.06(B)(not all co-conspirators need be charged in indictment). Once again, McGruder's counsel was not ineffective for failing to make a meritless argument. Allen v. Nix, 55 F.3d at 417.

## CONCLUSION

Because McGruder's claims either have been decided against him on direct appeal, or are otherwise lacking in merit, his § 2255 petition should be denied. Given the insubstantial nature of his claims, no evidentiary hearing is warranted.

Respectfully submitted,

Dated: July 26, 2005

THOMAS B. HEFFELFINGER
United States Attorney

s/ Jeffrey S. Paulsen
BY: JEFFREY S. PAULSEN
Assistant U.S. Attorney
Attorney ID Number 144332